# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OPTRONIC SCIENCES LLC, <br><br> Plaintiff, <br><br> v. <br><br> BOE TECHNOLOGY GROUP CO., LTD., <br><br> Defendant. | Case No. 2:23-cv-00549-JRG |

**PLAINTIFF OPTRONIC SCIENCES LLC'S RESPONSE TO DEFENDANT BOE TECHNOLOGY GROUP CO., LTD.'S MOTION FOR LEAVE TO SUPPLEMENT INVALIDITY CONTENTIONS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  LEGAL STANDARD.......................................................................................................... 1

III. RELEVANT FACTS ........................................................................................................... 2

IV.  ARGUMENT ....................................................................................................................... 5

   A.   The Diligence Factor Weighs Heavily Against Granting The Motion Because BOE Did Not Diligently Investigate Its Invalidity Contentions And Its "Excuses" Lack Support Or Merit................................................................................................................................... 5

   B.   BOE Has Not Shown Why The Proposed Amendments Are Important ........................... 9

   C.   The Prejudice Factor Weighs Heavily Against Granting The Motion Because Optronic Is Prejudiced By BOE's Proposed Amendments........................................................................ 11

   D.   Granting The Motion Will Likely Require A Continuance ............................................. 13

V.   CONCLUSION.................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Allure Energy, Inc. v. Nest Labs, Inc.*,
  84 F. Supp. 3d 538 (E.D. Tex. 2015) .................................................................................... 11

*Computer Acceleration Corp. v. Microsoft Corp.*,
  481 F. Supp. 2d 620 (E.D. Tex. 2007) .................................................................................... 13

*E-Watch Inc. v. Apple Inc.*,
  No. 2:13-cv-1061-JRG-RSP, Dkt. No. 230 (E.D. Tex. Dec. 5, 2014) ..................................... 13

*Hearing Components, Inc. v. Shure, Inc.*,
  No. 9:07CV104, 2008 WL 11348009 (E.D. Tex. June 5, 2008) .............................................. 8

*Innovative Display Techs. LLC v. Acer Inc.*,
  CA No. 2:13-cv-00522-JRG, 2014 WL 2796555 (E.D. Tex. Jun. 19, 2014) ....................... 9, 12

*Lionra Techs. Ltd. v. Fortinet, Inc.*,
  No. 2:22-cv-0322-JRG-RSP, 2024 WL 406514 (E.D. Tex. Feb. 2, 2024) ................................ 8

*Motio, Inc. v. Avnet, Inc.*,
  No. 4:12-cv-647, 2015 WL 5952530 (E.D. Tex. Oct. 13, 2015) ..................................... 8, 9, 12

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ................................................................................................. 1

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
  315 F.3d 533 (5th Cir. 2003) ..................................................................................................... 2

*Sol IP, LLC v. AT&T Mobility LLC*,
  No. 2:18-cv-00526-RWS-RSP, 2020 WL 87134 (E.D. Tex. Jan. 7, 2020) ............................... 2

*Uniloc 2017 LLC v. Google LLC*,
  Case No. 2:18-cv-00503-JRG-RSP, 2020 WL 709557 (E.D. Tex. Feb. 10, 2020) ........... passim

**Rules**

P.R. 3-6 ......................................................................................................................................... 1

**I.       INTRODUCTION**

BOE should not be permitted to supplement its Invalidity Contentions because BOE cannot demonstrate good cause. The Motion is based solely on conclusory attorney argument contradicted by the factual record, and the good cause factors all weigh against granting the Motion. For example, with respect to diligence, BOE's attorney argument attempts to justify its months of delay by pointing at availability and reverse engineering issues. But the new products BOE proposes to assert were readily obtainable on websites such as eBay, and the necessary testing could have been completed in days, not months. BOE presents no contrary evidence (or any evidence at all). With respect to importance, BOE has already asserted numerous anticipatory references. BOE's argument that the charts are important simply because they are purportedly anticipatory is not sufficient given the availability of its many other references that are purportedly anticipatory as well. And, with respect to prejudice, BOE's argument is contrary to precedent and to the reality that this case is well into the claim construction process, and the Motion is unlikely to be resolved until shortly before (or after) the close of discovery. Taken together, the relevant factors strongly weigh against granting of the Motion.

**II.      LEGAL STANDARD**

Patent Rule 3-6, which governs changes to a party's invalidity contentions, requires a showing of good cause for untimely supplementation of invalidity contentions. P.R. 3-6(b) ("[S]upplementation of any Infringement Contentions or Invalidity Contentions … may be made only by order of the Court, which shall be entered only upon a showing of good cause."). Good cause "requires a showing of diligence." *Uniloc 2017 LLC v. Google LLC*, Case No. 2:18-cv-00503-JRG-RSP, 2020 WL 709557, at *2 (E.D. Tex. Feb. 10, 2020) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)). "Diligence includes a

party's diligence in discovering the reference." *Sol IP, LLC v. AT&T Mobility LLC*, No. 2:18-cv-00526-RWS-RSP, 2020 WL 87134, at *1 (E.D. Tex. Jan. 7, 2020). "As other courts have recognized, the critical issue is not what the party did after they discovered the prior art; rather, the critical issue is whether or not the party seeking to amend exercised diligence in discovering the prior art." *Id*. (cleaned up).

Courts apply four factors to determine whether good cause has been shown: (1) the explanation for the failure to meet the deadline; (2) potential prejudice in allowing the thing that would be excluded; (3) the importance of the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Uniloc*, 2020 WL 709557, at *2. "The burden of proving good cause rests with the party seeking the untimely amendment." *Id*. (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

## III. RELEVANT FACTS

The Complaint was filed on November 22, 2023, asserting, among others, the '842, '914, '509, '733, and '121 patents. Dkt. 1. The Complaint contained detailed claim charts of almost all of the independent claims asserted by Optronic.[1] Dkt. 1-2 ('842 patent, claim 3), Dkt. 1-6 ('121 patent, claim 1), Dkt. 1-8 ('914 patent, claim 1), Dkt. 1-10 ('509 patent, claim 1), Dkt. 1-12 ('733 patent, claim 1); Ex. A[2] at 1-2 (infringement contentions). Though BOE had notice of the complaint well before, BOE agreed to waive formal service on April 19, 2024. Dkt. 13.

Optronic served its infringement contentions on July 19, 2024. Ex. A. After multiple extensions, BOE served its invalidity contentions over three months later, on October 25, 2024. Ex. B. Pertinent to the Motion, BOE listed a large number of "prior art systems and products" that

---

[1] Independent claim 7 of the '842 patent is also asserted but was not charted in the complaint.
[2] Alphabetic exhibits refer to exhibits to this Response. Number attachments were attached to the Motion.

2

purportedly "reveal the state of the art and/or render the Asserted Claims invalid under 35 U.S.C. §§ 102 and/or 103," including the NEC e616 phone, Nokia 92xx "Communicator" series phone, and IBM X31 laptop (Ex. B at 7-9, 32, 34). Though the form language in BOE's contentions "reserves the right to supplement contentions and accompanying claim charts after further discovery and investigation" (*e.g.*, Ex. B at 33), BOE propounded no discovery relevant to its contentions, produced no discovery indicative of a continuing "investigation," and did not notify Optronic of any continuing investigation until four months after the Invalidity Contentions were served.

Almost seven months after Optronic's infringement contentions were served and four months after invalidity contentions were served, BOE emailed counsel for Optronic asking for leave to supplement its invalidity contentions. Attachment 10. The proposed supplements were not attached to the email. Over two weeks later, BOE served copies of its proposed supplements. Attachment 14. Both in writing and in the meet and confer, BOE failed to demonstrate good cause or diligence, and instead simply asserted it was diligent.

Attachments 4-6 are supplemental charts disclosing new theories. BOE had already obtained and created "optical images" of the devices for its original contentions regarding the same products. *See* Attachments 7-9. BOE appears to have obtained new images for the purpose of disclosing new theories. For example, Attachment 4 is a supplement of Attachment 7. In its original chart, BOE provides the following disclosure of its theory:



Attachment 7 at 4. In Attachment 4, however, BOE's theory is substantially different, identifying different structures for the channel layer (*e.g.*, above the gate instead of below), and the source and drain (now separated and pointing to different areas).



Attachment 4 at 5. Similar changes to BOE's theories were made in its other charts. *Compare* Attachment 8 at 5 *with* Attachment 5 at 5 (same); Attachment 9 at 10-12 *with* Attachment 6 at 14 (disclosing new structure and theory for the sixth conductive layer).

      Attachments 1-3 are entirely new charts BOE proposes to serve. All of the newly charted products are readily available to acquire. *E.g.*, Ex. D (eBay search results showing at least 8 Nokia 9290 phones were available for shipping from the United States); Ex. F (eBay search results showing at least 3 IBM X31 laptops available for shipping from the United States); Ex. H (eBay search showing multiple NEC e616 phones available for purchase). To create the charts, BOE appears to have disassembled the devices and taken pictures with varying degrees of magnification. *See* Attachments 1-3.

4

## IV. ARGUMENT

### A. The Diligence Factor Weighs Heavily Against Granting The Motion Because BOE Did Not Diligently Investigate Its Invalidity Contentions And Its "Excuses" Lack Support Or Merit

At minimum, BOE had over six months to craft its invalidity contentions. *See* Dkt. 13 (BOE agreed it was given notice of the complaint by April 19, 2024, six months prior to the October 25, 2024 date for its invalidity contentions). Except for a single independent claim of the '842 patent, the complaint provided detailed charts for all of the independent Asserted Claims. BOE had more than enough time to research, acquire, and reverse engineer potential prior art. And BOE did in fact acquire and reverse engineer other purported prior art. *E.g.*, Attachments 7-9. Months later, BOE seeks to add more products and change previously disclosed theories based simply on conclusory assertions of diligence. This is not sufficient.

"A party must explain why, with reasonable diligence, it could not have discovered the relevant prior art references prior to the deadline for filing Invalidity Contentions." *Uniloc*, 2020 WL 709557, at *2 (cleaned up). BOE cannot provide such an explanation here. For the charts being supplemented (Attachments 4-6), BOE acquired and reverse engineered the products prior to its Invalidity Contentions. *See* Attachments 7-9 (disclosing "optical images" BOE generated by studying the purported prior art using unspecified techniques). To the extent BOE needed to redo or supplement this work with Electron Energy Loss Spectroscopy, which is BOE's argument on page 8 of the Motion, BOE could have done so in a matter of days. Fontecchio Decl. at ¶ 11. BOE has provided no reason why the supplemental work could not have been completed before the due date for the Invalidity Contentions, let alone in the four months since its original contentions were served.

BOE's newly-charted products (Attachments 1-3) similarly demonstrate a lack of diligence. BOE knew about the products and disclosed them as purportedly relevant in its

Invalidity Contentions. Ex. B at 7-9, 32, 34. As discussed below, they were readily available to purchase. Exs. C-H. And once acquired, the disassembly, cross-sectioning, and photographing demonstrated in the proposed charts could have been accomplished in a matter of hours. Fontecchio Decl. at ¶¶ 13-14. BOE failed to act with diligence in acquiring and studying the newly-charted products.

BOE argues that it was diligent because its efforts were "time- and resource-intensive," and it had significant difficulty with acquiring and reverse engineering the products. Mot. at 6-8. BOE does not cite a single fact to support its attorney argument, including but not limited to dated receipts showing its efforts to acquire purported prior art, invoices from reverse engineering vendors demonstrating the months of work BOE claims to have engaged in, or even a declaration supporting BOE's attorney argument. Indeed, BOE's arguments fail on their face with respect to at least Attachments 4-6 because BOE had already acquired and studied the purported prior art to create Attachments 7-9.

BOE likely cannot provide evidence to support its attorney argument. For example, BOE argues that its reverse engineering efforts were time intensive because they had to use Electron Energy Loss Spectroscopy and related analyses. According to Dr. Fontecchio, an expert experienced in such reverse engineering efforts, this task can be accomplished in no more than 2 days per product (or less). Fontecchio Decl. at ¶ 11. For the five products at issue in Attachments 1-6, the work could have been completed in less than two weeks. *See id.* at ¶¶ 11, 13-14. As another example, BOE argues that it needed time to "ensure" it studied "versions sold in the United States." Mot. at 7. If BOE engaged in any such efforts, they are not reflected in the proposed supplemental contentions. The first page of Attachments 1-6 simply asserts "upon and information belief" that the device was sold or used prior to the critical date without citing any evidence on which BOE's

6

belief is based. BOE has not produced any documents showing that the products it studied were sold or used in the United States during the prior art period. If BOE engaged in the efforts discussed in the Motion, BOE should have produced the relevant documentation long ago. Moreover, a simple eBay search reveals that two of the devices that BOE proposes to add (Attachments 1 and 3) are readily available from sellers in the United States. Ex. C (the first result on eBay for a Nokia 9290 device yields a device located in North Carolina and available for "delivery in 2-4 days"); Ex. D (at least 8 Nokia 9290 devices were available for shipping from the United States); Ex. E (an IBM X31 laptop located in Rhode Island and available for "delivery in 2-4 days"); Ex. F (listing 3 IMB X31 laptops available for shipping from the United States). The third device, the NEC e616 (Attachment 2), appears to have been a phone made specifically for Three, a British cellular company. Ex. G (the logo for Three is engraved on the front of the device); https://www.three.co.uk/ (website for British company, still using similar logo); Ex. H (eBay search results showing phones with Three logo available for purchase).[3] There is no indication that BOE engaged in any effort to "ensure" it studied only products available in the United States or that such efforts lead to delays in diligence.

BOE's excuse for its lack of diligence for Attachments 4-6 is even worse. BOE had already acquired and reverse engineered the products at issue. *See* Attachments 7-9 (originally-served showing "optical image" pictures of the devices). BOE is silent on why the supplemental work was not done as part of its original Invalidity Contentions. But, even if BOE had such an excuse, if done diligently, whatever additional work was necessary could have been completed in a matter

---

[3] Attachment 2 does not contain a picture of the front of the device, which likely prominently displays the Three logo based on Optronic's research. The device has also not been made available to Optronic. The fact that BOE is relying on a device that was not likely sold or used in the United States further contradicts its claims of diligence.

of days after service of the Invalidity Contentions. *See* Fontecchio Decl. at ¶ 11. And BOE could have informed Optronic of its need to supplement shortly after service. BOE has not presented any excuse for its months of delay.

BOE asserts two additional arguments. First, it argues that its lack of diligence is "understandable and excusable" because its proposed supplements apply to "a limited number of system art references amongst a huge number of potentially relevant prior art displays." Mot. at 7-8 (citing *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07CV104, 2008 WL 11348009, at *1 (E.D. Tex. June 5, 2008)). But the "huge number of potential" prior art systems was generated by BOE using criteria unknown to Optronic.[4] BOE's "huge" list is of its own making and does not excuse diligence. This is different than *Hearing Components* where the "avalanche or paper and native application data" was produced by the patent owner. 2008 WL 11348009 at *1. BOE could have avoided its "huge number" of systems problem if it had engaged in diligence while generating its list of purportedly "relevant" prior art. Second, BOE cites *Lionra Techs. Ltd. v. Fortinet, Inc.*, No. 2:22-cv-0322-JRG-RSP, 2024 WL 406514 (E.D. Tex. Feb. 2, 2024) and *Motio, Inc. v. Avnet, Inc.*, No. 4:12-cv-647, 2015 WL 5952530 (E.D. Tex. Oct. 13, 2015), neither of which is helpful to BOE. *Lionra* is actually contrary to BOE's argument because defendants were ***not allowed*** to add new references where the reference was known but defendants delayed in their investigation, facts that are strikingly similar to those related to BOE's Attachments 1-3. 2024 WL 406514, at *2-3. The supplements to existing charts were allowed in *Lionra* because defendants showed that documentary discovery was necessary and time consuming. *Id.* at *2. Here, the only evidence in the record demonstrates that the new products could have been acquired in a matter of days (Exs.

---

[4] According to the Motion, BOE engaged in no investigation of whether the purportedly "relevant" prior art systems disclosed in the Invalidity Contentions were in fact relevant. Optronic reserves the right to explore the implications of this argument later in the litigation if necessary.

8

C-H) and the required reverse engineering for Attachments 1-6 could have been accomplished in hours or days per product (Fontecchio Decl. at ¶¶ 11, 13-14). The fact that it took BOE months to seek leave to supplement demonstrates a lack of diligence, and is not an excuse. In *Motio*, after chastising the defendant for not citing evidence for some of its arguments (similar to BOE here), the court ultimately found good cause because defendant acted with "utmost diligence" and "immediately" notified plaintiff about the reference and relevant discovery after it was found. 2015 WL 5952530 at *3. The facts here are the opposite. BOE has known and possessed the prior art in Attachments 4-6 since before the Invalidity Contentions were served. They were not newly discovered and BOE did not operate with the "utmost diligence." Similarly, the new products in Attachments 1-3 were known to BOE since at least as early as its service of the Invalidity Contentions (which identify the products as potentially anticipatory) but BOE still waited until the end of February 2025 to provide charts. BOE acted with none of the immediacy or "utmost diligence" key to the decision in *Motio*. *Motio* does not apply.

Accordingly, the diligence factor weighs heavily against granting BOE's Motion.

### B. BOE Has Not Shown Why The Proposed Amendments Are Important

BOE's assertion that the supplemental charts are "important" is belied by its own failure to timely do the necessary testing (Attachments 4-6), and to acquire and investigate the new products (Attachments 1-3). Conclusory arguments of importance, like those advanced in the Motion, have been found to weigh against granting of similar motions in other cases. *E.g.*, *Innovative Display Techs. LLC v. Acer Inc.*, CA No. 2:13-cv-00522-JRG, 2014 WL 2796555, at *2 (E.D. Tex. Jun. 19, 2014) (finding this factor weighed against amendment where, similar to here, "Defendants argue—in conclusory fashion—that it is 'critically important' that the new art be considered and that these arts provide 'a unique ground' for both anticipation and obviousness"

without further explanation); *Uniloc*, 2020 WL 709557, at *3-4 (finding an amendment is not important where a defendant "does not adequately identify any disclosure in the new information that is distinct from Google's already-identified prior art"). This issue is particularly acute with respect to Attachments 4-6 where, even assuming the further study could not have been done prior to service of the Invalidity Contentions, BOE could have accomplished its supplemental testing in a matter of days. *See* Fontecchio Decl. at ¶ 11. BOE's months of delay suggests a lack of importance in generating its supplemental charts and filing the Motion.

BOE's importance arguments are also unsupportable. The fact that Attachments 1-6 are different or new is not sufficient to make them important. Here, Attachments 1-6 appear to simply be more of the same. With respect to the three new products asserted against the '842 and '914 patents (Attachments 1-3), BOE already asserts that 11 references anticipate the '842 patent (Ex. B at 10) and 6 references anticipate the '914 patent (Ex. B at 35). BOE provides no reason why the new references are better or more important than these already-disclosed anticipation arguments. For the supplemental disclosures (Attachments 4-6), BOE confusingly argues that they are important because they could have disclosed the same new theories in an expert report instead. Mot. at 8. If the supplements were appropriate fodder for an expert report, BOE would not have brought the Motion. Instead, BOE seeks leave to serve its supplemental charts because it knows the supplements disclose new theories of invalidity as discussed above. If these theories were important, BOE should have disclosed them in its Invalidity Contentions, or, failing that, performed the necessary supplemental work shortly after service of the Invalidity Contentions. The fact that BOE chose not to do so suggests the supplements are not important. And, BOE has at least 6 other charted purported prior art references that it asserts are anticipatory (in addition the

10

original disclosed theories for the products subject to the "supplemental" charts). Ex. B at 26, 42, 49.

Accordingly, this factor weighs strongly against granting BOE's Motion.

### C. The Prejudice Factor Weighs Heavily Against Granting The Motion Because Optronic Is Prejudiced By BOE's Proposed Amendments

Optronic will be prejudiced if the Motion is granted. Optronic has already expended significant litigation resources relying on BOE's original Invalidity Contentions, and it developed its claim construction positions based on BOE's original contentions. BOE did not serve its proposed amendments until shortly before the March 11, 2025 P.R. 4-1 deadline, this response is being filed after the parties' April 1, 2025 P.R. 4-2 disclosures, and the Motion will likely not be decided until shortly before the close of discovery, if not after. This is the time of the case when the parties' positions should be well-understood, not shifting and changing as proposed by BOE.

Optronic has also spent significant resources studying BOE's Invalidity Contentions. The fact that BOE waited until shortly before claim construction to make additional fundamental changes to its Invalidity Contentions, including asserting entirely new prior art references and theories, is highly prejudicial to Optronic. BOE should not be rewarded for its failure to serve appropriate Invalidity Contentions when originally required.

Judge Clark has previously noted that "no experienced practitioner would argue that the sudden introduction of a new prior art reference is not prejudicial. But prejudicing an opponent is the goal of a trial lawyer." *Allure Energy, Inc. v. Nest Labs, Inc.*, 84 F. Supp. 3d 538, 542-43 (E.D. Tex. 2015) (finding this factor "decidedly" weighed against amendment where the requested amendment came well into the claim construction process). BOE's argument that the proposed amendments were received days "prior to the institution of claim construction proceedings" does not mean that Optronic has not been prejudiced. It means just the opposite. *See, e.g.*, *Innovative*

11

*Display*, 2014 WL 2796555 at *2 ("Allowing Defendants to amend the invalidity contentions so close to the Claim Construction Hearing [two months before], and after the parties have largely formulated their respective positions, would force Plaintiff to spend more time and resources in modifying its existing construction."); *Danco*, 2017 WL 11630547 at *6 (E.D. Tex. Sept. 13, 2017) (finding prejudice where amendment was not disclosed until well into the claim construction process); *Uniloc 2017*, 2020 WL 709557, at *3 (finding prejudice where amendment occurs during or after the claim construction process); *Motio*, 2015 WL 5952530 at *4 ("The Court does note that some prejudice due to timing may be experienced by the Plaintiff"; finding that other factors outweigh this prejudice).

BOE argues that Optronic has not been prejudiced because it could have been engaging the relevant discovery and work since BOE served its untimely notice of supplementation. Forcing Optronic to devote resources and time to BOE's supplemental arguments regardless of good cause or the required court order emphasizes the substantial prejudice of BOE's untimely supplements. Optronic has limited time and resources that should be dedicated to already-scheduled tasks such as claim construction and discovery. The argument that BOE's unexpected and untimely demand to supplement its Invalidity Contentions should result in unplanned and time-consuming work for Optronic demonstrates prejudice, not the lack of prejudice as asserted by BOE.

BOE's own diligence argument also works against it here. If BOE's argument that its supplemental contentions required "time- and resource-intensive" work were fully credited, the same arguments would apply in the negative sense here. It is highly prejudicial to Optronic to have to engage in such "time- and resource-intensive" towards the end of discovery when this type of information was supposed to have been disclosed months ago. Assuming the same timeline for BOE's purported diligence, even if Optronic were to begin its tasks now, before BOE has been

12

granted leave, the work would not be complete until shortly before the August 18, 2025 deadline for the close of discovery. Optronic will have little if any opportunity to engage in any necessary follow-up discovery. And, if leave is not granted, Optronic will have wasted significant amounts of time and resources on arguments BOE has no excuse for not raising earlier. Optronic has been highly prejudiced.

BOE's cited cases do not support its argument. In *E-Watch*, the supplement was requested only a month after the original deadline and was necessitated by the need to obtain translations. *E-Watch Inc. v. Apple Inc.*, No. 2:13-cv-1061-JRG-RSP, Dkt. No. 230, at 2-3 (E.D. Tex. Dec. 5, 2014) (attached as Ex. I). Here, BOE delayed much longer and has no legitimate reason for its delay. If BOE had acted diligently, it could have sought supplementation within weeks, not months. *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620 (E.D. Tex. 2007) is an older opinion that does not reflect more recent precedent in this District. And the issue there was the addition of a single patent, whose disclosure is self-contained. *Id.* at 626. By contrast, here, discovery will be required, including production of BOE's test units and test data, Optronic's own testing and study of the test units, and potentially international discovery. BOE has not produced any discovery related to its contentions, including the devices or raw data, further prejudicing Optronic.

The prejudice factor therefore weighs heavily against amendment.

D.  **Granting The Motion Will Likely Require A Continuance**

BOE proclaims that its amendment will not require a continuance. Mot. at 10. But that is not likely to be true. Because of BOE's lack of diligence, it is likely that the Motion is not decided until much closer to the August 18, 2025 close of discovery. A continuance is likely to be necessary

to allow Optronic to fully analyze BOE's new allegations and serve any discovery necessary to defend against these new contentions.

This factor weighs against granting. Even if Optronic were to make the strategic decision to not seek a continuance in light of BOE's untimely supplements, this factor would at best be neutral.

## V.     CONCLUSION

For the foregoing reasons, at least three of the relevant factors weigh heavily against granting of the Motion. The Motion should therefore be denied.


Dated: April 2, 2025                                    Respectfully submitted,

                                                                         */s/ Benjamin T. Wang*
                                                                         Benjamin T. Wang

Benjamin T. Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Andrew D. Weiss
CA State Bar No. 232974
Email: aweiss@raklaw.com
Christian W. Conkle
CA State Bar No. 306374
Email: cconkle@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
*Optronic Sciences LLC*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Benjamin T. Wang*
Benjamin T. Wang

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 2, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

*/s/ Benjamin T. Wang*
Benjamin T. Wang