# OPTRONIC SCIENCES LLC.
## v.
# BOE TECHNOLOGY GROUP CO., LTD.

## BOE's Claim Construction Presentation

Markman Hearing  |  July 23, 2025

Civil No. 2:23-cv-00549-JRG-RSP

# "comprising / substantially L-shaped structure"

## '842 Patent – Claims 3, 7

# "comprising / substantially L-shaped structure"

## '842 Patent – Claims 3, 7

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| Plain and ordinary meaning, i.e., a structure shaped substantially like an L – Comprising does not operate to literally encompass other shapes | Plain and ordinary meaning |

### Does "comprising" operate to encompass structures with different shapes?

## No.

## The Claim and Specification Supports BOE's Proposed Construction

### '842 Patent – Claims 3, 7

"a substantially L-shaped structure" = a structure shaped substantially like an L

**3**. A backlight package comprising:

a light guiding plate having a first side;

a first fastener having a first portion and a second portion, the first portion disposed adjacent to the first side of the light guiding plate, wherein the first portion and the second portion are arranged in a substantially perpendicular relationship to form a substantially L-shaped structure; and

a light emitting device disposed on the first portion of the first fastener for emitting a light toward the light guiding plate.

Ex. 1 (96-2) at 7, '842 Patent, claim 3



Fig.4

Ex. 1 (96-2) at 4, '842 Patent, Fig. 4

## "Comprising" v. "Substantially L-Shaped Structure"

### "Comprising" does not operate to encompass other shapes



Resp. Br. (98) at 2.

"The sculpture is already complete within the marble block, before I start my work. It is already there, I just have to chisel away the superfluous material." - Michelangelo

# "Comprising" Does Not Change Recited Elements

## '842 Patent – Claims 3, 7

***Outside the Box Innovations, LLC v. Travel Caddy, Inc.***, 695 F.3d 1285, 1305 (Fed. Cir. 2012)



"'[C]omprising' means that additional components may be present in the device, but does not change the elements that are stated in the claim.

***In re Varma v. IBM Corp.***, 816 F.3d 1352, 1362 (Fed. Cir. 2016)



"'Comprising' means that the claim can be met by a system that contains features over and above those specifically required by the claim element, but only if the system still satisfies the specific claim-element requirements: the claim does not cover systems whose unclaimed features make the claim elements no longer satisfied."

## "Comprising" Permits Additional, Unrecited Elements

### '842 Patent – Claims 3, 7

*Amgen Inc. v. Amneal Pharms. LLC*, 945 F.3d 1368, 1378-79 (Fed. Cir. 2020)



"The term 'comprising' is the standard transition term used to make clear that the claim does not preclude the presence of components or steps that are in addition to, though not inconsistent with, those recited in the limitations that follow."

- The Court found the claimed binders were present and that "comprising" reinforced that additional, unclaimed binders may be included. *Id.* at 1378-79.

7

## The Prosecution History Supports BOE's Proposed Construction

### '842 Patent – Claims 3, 7

Original claim to "substantially perpendicular" rejected over Kuwabarra's "C"/"U" shaped structure 22

6.    In reference to Claim 3, **Kuwabara** et al. shows a backlight package comprising:

- A light guiding plate having a first side [Figure 1: (1)];

- A first fastener having a first portion and a second portion, the first portion disposed adjacent to the first side of the light guiding plate, wherein the first portion and the second portion are substantially perpendicular to each other [Figure 1: (22)];

- And a light emitting device disposed on the first portion of the first fastener for emitting a light toward the light guiding plate [Figure 1: (2)].

Ex. A (98-2) at 20, June 1, 2006 Rejection at 3



Ex. F (98-6) at 3, Kuwabarra, Figure 1

## The Prosecution History Supports BOE's Proposed Construction

### '842 Patent – Claims 3, 7

Amendment and Argument Disclaimed "C"/"U" shaped structure

3. (Currently Amended) A backlight package comprising:

a light guiding plate having a first side;

a first fastener having a first portion and a second portion, the first portion disposed adjacent to the first side of the light guiding plate, wherein the first portion and the second portion ~~are substantially perpendicular to each other~~ are arranged in a substantially perpendicular relationship to form a substantially L-shaped structure; and

a light emitting device disposed on the first portion of the first fastener for emitting a light toward the light guiding plate.

Ex. A (98-2) at 4-5 , Aug. 31, 2006 Amendment at 3-4.

Rejections Under 35 USC § 102

In the outstanding Office Action, the Examiner rejected claims 3, 5, 7, and 8 under 35 USC § 102 as being anticipated by Kuwabara et al. (hereafter "Kuwabara"). As indicated by the Examiner, however, claims 4 and 10 recite allowable subject matter claiming the substantially L-shaped structure." This limitation from those claims 4 and 10 has now been incorporated into claims 3 and 7, respectively, thereby making claims 3 and 7 as well as claims 5 and 8 depending therefore patentable over Kuwabara.

Ex. A (98-2) at 9, Aug. 31, 2006 Amendment at 7.



Ex. F (98-6) at 3, Kuwabarra, Figure 1

## The Prosecution History (IPR) Supports BOE's Proposed Construction

### '842 Patent – Claims 3, 7

Argument Disclaimed "T" and "U" shaped structures

3.  **"T" and "U" Disclosed; "L-shaped" Lacking**

Uekusa explicitly describes its body as T-shaped and frame as U-shaped or plate-shaped, not L-shaped. Ex. 1008, abstract ("a generally T-shaped body section), 2:35–37 ("a generally T-shaped body section"), 4:4–10 ("a generally U-shaped frame 40 . . . and a plate-shaped extension part 41"). "T," "U," and "plate" are the words that Uekusa (who was not plagued with hindsight) chose to describe the shape of its structures.  Uekusa thus serves as unbiased evidence of 1) how a POSITA

Ex. C (98-4) at 9, Patent Owner Response at 32.



Ex. 1008, Figs. 5 and 6 (showing T-shaped body and U-shaped resin frame with a plate-shaped extension.

Ex. C (98-4) at 10, Patent Owner Response at 33.

Plaintiff is estopped from arguing otherwise. *Aylus Networks, Inc. v Apple, Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017)

# Plaintiff's Reply Argument Lacks Merit

- Plaintiff: "It may be that the entire E shape is part of the fastener, but it could also be that all (or part) of the upper two prongs of the E shape are not part of the fastener and are different structures such as other fasteners or heat dissipating elements."

  - Plaintiff's speculation about hypothetical devices is irrelevant to the claim construction dispute

  - Plaintiff cannot recapture other shaped structures by re-labelling portions of the structure

> **3**. A backlight package comprising:
> a light guiding plate having a first side;
> a first fastener having a first portion and a second portion, the first portion disposed adjacent to the first side of the light guiding plate, wherein the first portion and the second portion are arranged in a substantially perpendicular relationship to form a substantially L-shaped structure; and
> a light emitting device disposed on the first portion of the first fastener for emitting a light toward the light guiding plate.

Ex. 1 (96-2) at 7, '842 Patent, claim 3

# "the second portion extending above the light guide plate"

## '842 Patent – Claim 7

# "the second portion extending above the light guide plate"

## '842 Patent – Claim 7

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

Is there a reasonably definite direction in claim 7 by which to apply "above"?   No.

If this term is definite, what is its plain and ordinary meaning?   ???

13

## § 112:  Claims Must Provide Objective Boundaries

### '842 Patent – Claim 7

***Interval Licensing LLC v. AOL, Inc.,*** **766 F.3d 1364, 1370-71 (Fed. Cir. 2014)**



For a claim phrase to satisfy the definiteness requirement of Section 112, **it is not enough to identify some standard** for measuring the scope of the phrase... <mark>The claims</mark>, when read in light of the specification and the prosecution history, <mark>must provide objective boundaries</mark> for those of skill in the art.

(emphasis added)

# "the second portion extending above the light guide plate"

## '842 Patent – Claim 7

7. A backlight package comprising:

a light guiding plate having a first side;

a first fastener having a first portion and a second portion, the first portion extending along the first side of the light guiding plate, and ==the second portion extending above the light guiding plate== wherein the first portion and the second portion are arranged in a substantially perpendicular relationship to form a substantially L-shaped structure;

a light emitting device disposed on the first portion of the first fastener for emitting a light toward the light guiding plate; and

a circuit board connecting the second portion of the first fastener; and

a conducting wire electrically coupling the light emitting device to the circuit board.

*'842 patent, claim 7*

- Claim 7 fails to provide objective boundaries for "above"

  – Ex. 9 (96-10), Baker Decl. at ¶ 38 ("A POSITA would find nothing in the claims that establishes a frame of reference for 'above.'")

  – Plaintiff agrees: Op. Br. at 5 "the claims do not expressly provide a further frame of reference"

15

# "the second portion extending above the light guide plate"

## It is undisputed that the specification provides no guidance



*'842 patent, Fig. 4*

> plate **48**. The second portion **44B** of the L shaped fastener extends **behind** the light guiding plate **48** in a direction parallel to the longitudinal axis **47**. The light emitting device

*'842 patent, 3:37-39*

The only disclosed embodiment:

- Figure 4 illustrates second portion 44b below light guiding plate 48

    - No discussion of "above"

    - No "display" or "user"

- The text describes second portion 44b as "behind" the light guiding plate 48

## "the second portion extending above the light guide plate"

### It is undisputed that the specification provides no guidance

Plaintiff:  the only disclosed embodiment is "irrelevant"

in this dispute). The remainder of BOE's argument (Resp. at 5-7) are <u>irrelevant</u> distractions. For example, Fig. 4 of the '842 patent is a cross-section of a preferred embodiment that is cut in the wrong direction for this limitation. It is <u>irrelevant</u> to the plain meaning of the term, and Dr. Bretschneider's testimony cited by BOE only concerns his reluctance to offer an opinion about a potential written description argument that he had not previously disclosed (and it outside the scope of claim construction).[7] BOE's cite to Optronic's infringement contentions (evidence that

*Reply Br. at 4*

17

# The Ordinary English Meaning of "Above" Does <u>Not</u> Apply

## The parties and experts agree

22    Q  You agree that a jury should not look at
23  how a device is physically oriented by the end
24  user to determine whether the above limitation is
25  practiced, correct?
1       A  That's correct.
2       Q  And that's true for both the '509 patent
3  and the '842 patent, correct?
4       A  That's correct.

*Ex. DD (98-30) at 20-21, Bretschneider Tr. at 72:22-73:4*

50.     The ordinary meaning of "above" in the context of the physical relationship between structures is determined relative to gravity. But under that ordinary meaning, whether a device practices the claims depends on how the device is oriented by a user relative to gravity, i.e., how it is used. A POSITA would have been uncertain as to the scope of this claim because that requirement contradicts the fact that these are "apparatus" claims that should be defined based on what the apparatus is, not how it is used.

*Ex. 9 (96-10), Baker Decl. at ¶ 50*

18

## Plaintiff's Expert's Definition is Not Credible

computer monitor or a phone screen. A structure is therefore "above" another if, in the line through which light travels from the display to the eye, it is "above." The specification, discussed below,

*Ex. 9 at ¶78*

❌ Definition is circular by using "above" to define "above"

❌ "Display" and direction of light emission therefrom is not claimed and is not described in specification

❌ "User's eye" is not claimed and is not described in specification

❌ No corroborating evidence that "above" is ever used in this sense – intrinsic or extrinsic

# Plaintiff's Expert is Not Credible

computer monitor or a phone screen. A structure is therefore "above" another if, in the line through which light travels from the display to the eye, it is "above." The specification, discussed below, is consistent with the understanding of a POSITA. In the two-dimensional cross-sectional views in the specification, "above" is the "up" direction. "Side" is in the left or right direction.

*Ex. 9 at ¶78*



Fig.4

*'842 patent, Fig. 4*

```
12    Q Do you have an opinion, sitting here
13 today, whether the second portion, 44B, is below
14 the light guide plate 48?
15        ATTORNEY WEISS:  Same objections.
16    A Again, I didn't offer the opinion, because
17 it's talking about the light guide plate.  The
18 rest of the display isn't there.
```

*Ex. DD at 100:12-18*

20

# Plaintiff's Attempt to Fill the Void Fails

> a "light guiding plate" is still reasonably certain. These LED packages are designed to be used in a display (like a cellphone screen or a flat panel monitor) and have a natural orientation known to a POSITA. Bretschneider Decl. at ¶¶ 78, 88. The back of the display is the bottom and "above" refers to the direction the light would travel to the observer of the screen. Id.[2] The meaning of this

*Op. Br. at 6; See also Reply Br. at 3*

❌ Not an "ordinary meaning" of "above" – construction required

❌ No support in intrinsic record

❌ No "natural orientation" discussed by Plaintiff's expert

❌ Improperly based on use of the claimed backlight package with an unclaimed display

# "the second portion extending above the light guide plate"

## Plaintiff cannot tell which way is "above"



Annotated photograph of NV156FHM-T06 module showing the second portion extending above the light guiding plate.

*Ex. E (98-5) at 15, 842 Infringement Contentions at 14*



Annotated photograph of NV156FHM-T06 module showing the second portion extending above the light guiding plate.

*Ex. E (98-5) at 16, 842 Infringement Contentions at 15*

22

# "the second portion extending above the light guide plate"

## What objective criteria should be used to determine whether a "backlight package" infringes?

- Not the ordinary English meaning of "above" – requires construction

- Intended use in display relative to user? Direction of light travel from display relative to backlight package?

7. A backlight package comprising:

a light guiding plate having a first side;

a first fastener having a first portion and a second portion, the first portion extending along the first side of the light guiding plate, and the second portion extending above the light guiding plate wherein the first portion and the second portion are arranged in a substantially perpendicular relationship to form a substantially L-shaped structure;

a light emitting device disposed on the first portion of the first fastener for emitting a light toward the light guiding plate; and

a circuit board connecting the second portion of the first fastener; and

a conducting wire electrically coupling the light emitting device to the circuit board.

'842 patent, claim 7



Fig.4

'842 patent, Fig. 4

23

# "disposed above" (claim 1) / "disposed at a side of" (claim 10)

## '509 Patent – Claims 1, 10

# "disposed above" (claim 1) / "disposed at a side of" (claim 10)"

## '509 Patent – Claims 1, 10

| BOE's Proposed Construction | Optronic's Proposed Construction |
| --- | --- |
| Indefinite | Plain and ordinary meaning |

Is there a reasonably definite direction in claim 1 by which to apply "disposed above"
(and in claim 10 by which to apply "disposed at a side")?

## No.

# § 112:  Claims Must Provide Objective Boundaries

## '509 Patent – Claims 1, 10

*Interval Licensing LLC v. AOL, Inc.,* **766 F.3d 1364, 1370-71 (Fed. Cir. 2014)**



For a claim phrase to satisfy the definiteness requirement of Section 112, **it is not enough to identify some standard** for measuring the scope of the phrase... <mark>The claims</mark>, when read in light of the specification and the prosecution history, <mark>must provide objective boundaries</mark> for those of skill in the art.

(emphasis added)

## "disposed above" in claim 1

### '509 Patent – Claim 1

1. A pixel structure, comprising:
a data line and a scan line;
at least one active device electrically connected with the data line and the scan line, and each active device comprising a gate, a channel layer, a source, and a drain;
a first auxiliary electrode electrically insulated from the active device; and
a light emitting device disposed above the first auxiliary electrode, wherein the light emitting device comprises:
a first electrode layer electrically connected with the first auxiliary electrode;
a light emitting layer disposed on the first electrode layer; and
a second electrode layer disposed on the light emitting layer, wherein the second electrode layer is electrically connected with the active device.

*'509 patent, claim 1*

- Claim 1 fails to provide objective boundaries for "disposed above"

- There is no "above" direction established by any claim term

# '509 Patent Figures Show a Single Frame of Reference Fixed on a Page

## '509 Patent – Claim 1



FIG. 3

*509 patent, Fig. 3*

"a light emitting device disposed above the first auxiliary electrode"

- The "above" direction in '509 patent specification is provided by cross-section figures on printed pages

  – Claims are directed to a pixel structure, not printed figures.

## Claim 1 is directed to a device, not cross-section view on a page

### '509 Patent – Claim 1

- There is nothing in claim 1 to differentiate the light emitting device being "disposed above" the first auxiliary electrode, versus "disposed below" it



## Plaintiff's "Substrate" Argument Fails

- Plaintiff's sole argument: "above" is the direction away from the substrate

> devices resulting from known techniques. When discussing structures in a semiconductor, including a pixel structure, a POSITA would know that "above" is in the direction away from the substrate, and "side" refers to the direction parallel to the substrate. Bretschneider Decl. at ¶¶ 79-

*Op. Br. at 5*

- There is NO substrate in the claims

  ❌ Plaintiff admits directionality is defined only by an unclaimed element

  ❌ No requisite "objective boundary" in the claims
  *Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1370-71 (Fed. Cir. 2014)*

- **Plaintiff's "plain and ordinary meaning" inappropriate for lay jury**

30

## Plaintiff's "Substrate" Argument Fails

- There is no single direction "away from the substrate"



## Plaintiff's "Substrate" Argument Fails

- Plaintiff theory based upon layer formation

> the meaning of the terms. The '509 patent uses ==basic semiconductor-building concepts== where layers of material are built on top of a substrate. Bretschneider Decl. at ¶¶ 79 ==(layers are added to the substrate in the upward direction)==, 34 (describing basic semiconductor building technique).

*Op. Br. at 5*

✖ Plaintiff's theory:  Not only must we look to an unclaimed element, we also must consider the method of its formation

  ✖ Known to form materials on both major surfaces of the substrate

  ✖ Known to include multiple substrates as part of pixel devices

32

# Plaintiff's Expert Admits to Ambiguity

- Plaintiff's expert admits there is a second, conflicting understanding of POSITA

> computer monitor or a phone screen. **A structure is therefore "above" another if, in the line through which light travels from the display to the eye, it is "above."** The specification, discussed below,

*Ex. 9 at ¶78*

  – Direction of light travel and the eye position are **not claimed**
    ✖ no objective boundaries in claim 1

- Plaintiff's expert admitted claim 1 is not limited to top emission devices *Ex. DD at 81:2-11*

  – "above" can be "toward" or "away" from the substrate



Top emission device

Above = **away from** the substrate



Bottom emission device

Above = **toward and through** the substrate

## Plaintiff's Expert Could Not Apply His Own Construction

- When confronted with contradiction, Plaintiff's counsel instructed its expert not to answer which way is "up"

> 5    Q So in a bottom-emission LED, which way is
> 6  up?
> 7        ATTORNEY WEISS: I'm going to object and
> 8  instruct you not to answer. This is IPR

*Ex. DD at 82:5-24*

  – Later, Plaintiff's expert testified he had "no opinion" *Ex. DD at 84:20-24*

- Plaintiff's expert could not identify the "above" direction for:

  – devices having two substrates

  – devices having layers formed on both sides of the substrate

  – devices having non-planar surfaces

  *Ex. DD at 88:17-89:4; 89:21-90:10; 90:11-91-:16*

34

## Plaintiff Contradicts Its Sole Infringement Allegation in Complaint

- Sole Infringement Allegation in Complaint:

> Claim 1: "a light emitting device **disposed above** the first auxiliary electrode"



- Substrate at top

*Ex. B at 7*

– "Disposed above" is in the direction "**toward**" the substrate, not "away"

- **Plaintiff directly contradicted what it now argues a POSITA would know**

# Plaintiff Contradicts Its Own Infringement Contentions

- Infringement contentions allege two theories

> Claim 1: "a light emitting device **disposed above** the first auxiliary electrode"

 

*Ex. MM at 8*

Theory #1 (substrate at bottom)
 – above direction "away from" substrate



Annotated SEM cross-section image of OLED pixel structure of BOE panel in iPhone 14, showing light emitting device above first auxiliary electrode in the alternative.

*Ex. MM at 11*

Theory #2 (substrate at top)
 ❌ above direction "**toward**" the substrate

- **Plaintiff exploited the indefiniteness of claim 1 to file this lawsuit, and to maintain it.**

36

# Plaintiff's Reliance on Printed Figures Fails

- Printed pages have an up direction dictated by numbers and letters



*'509 patent, Figs. 3-4*



*'509 patent, Fig. 5*



*Ex. 11, at 60*

*Ex. 11, at 91*

- **Pixel devices have no such numbers and letters**

# "disposed at a side"

## '509 Patent – Claim 10

**10.** The pixel structure according to claim **1**, further comprising a <u>second auxiliary electrode</u> electrically insulated from the active device and <mark>disposed at a side</mark> <u>of the light emitting device,</u> wherein the second auxiliary electrode is electrically connected with the first electrode layer of the light emitting device.

*'509 patent, claim 10*

- Claim 10 fails to provide objective boundaries for "disposed at a side"

- There is no "side" direction established by any claim term.

38

## Plaintiff's "Disposed at a Side" Argument Fails

- Plaintiff's sole argument:  "side" is the direction parallel to the substrate

> devices resulting from known techniques. When discussing structures in a semiconductor, including a pixel structure, a POSITA would know that "above" is in the direction away from the substrate, and "side" refers to the direction parallel to the substrate. Bretschneider Decl. at ¶¶ 79-

*Op. Br. at 5*

- There is NO substrate in the claims

    ✖ Plaintiff admits directionality is defined only by an unclaimed element

    ✖ No requisite objective boundary in the claims
    *Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1370-71 (Fed. Cir. 2014)*

- **Plaintiff's "plain and ordinary meaning" inappropriate for lay jury.**

# "fastener"

## '842 Patent – Claims 3, 7

# "fastener"

## '842 Patent – Claims 3, 7

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| (new) a feature that holds something in place | (new) a feature that attaches something |

**Should a functional limitation ("attaches") be imported into a claimed structural limitation("fastener")?**

## No.

# "fastener"

## '842 Patent – Claims 3 & 7

**3.** A backlight package comprising:
a light guiding plate having a first side;
a first fastener having a first portion and a second portion,
   the first portion disposed adjacent to the first side of the
   light guiding plate, wherein the first portion and the
   second portion are arranged in a substantially perpen-
   dicular relationship to form a substantially L-shaped
   structure; and
a light emitting device disposed on the first portion of the
   first fastener for emitting a light toward the light
   guiding plate.

*'842 patent, claim 3*

**5.** The backlight package as claimed in claim **3**, further
comprising a circuit board and a conducting wire, the circuit
board connecting the second portion, and the conducting
wire electrically coupling the light emitting device to the
circuit board.

*'842 patent, claim 5*

- Claim language is clear that LED is "disposed on" and circuit board is "connected to" fastener

- Improper to import "attaches" function into the fastener's structure

# '842 Intrinsic Evidence

## '842 Patent – Claims 3 & 7

- At most, specification discloses that the fastener structure provides surfaces to hold the LED and PCB in place to emit light into light guide plate.
  '842 patent, Figs, 2, 4, 1:51-60, 2:12-16, 2:29-35, 3:33-43, 3:44-50, 4:1-4



'842 patent, Fig. 4

- Details of medium that provides attachment to fastener not disclosed. Could have been, for example, conductive wires are "attached to PCB 45 with solder 51." '842 patent, 3:59-64

- Functional limitations in the specification should not be imported into claims.
  *Toro Co. v. White Consol. Indus., 266* F.3d 1367, 1371 (Fed. Cir. 2001)

43

## Plaintiff's Reliance on Extrinsic Evidence Also Fails

- Plaintiff's use of the verb tense of "fastener" highlights impropriety of construction

> plain meaning of the term. The use of fastener in the intrinsic evidence is also consistent with the plain use of "fastener" in dictionaries as well. Ex. 13 at 407 ("fasten" means to "to attach firmly to" or "to make fast or secure"); Ex. 14 at 493 ("fastening" means "the act or way of making something fast, or secure").

*Op. Br. at 5*

❌ Claims 3, 5, and 7 are apparatus claims, NOT method claims

❌ "Fasten," "fastening," and "attach" nowhere in claim language.

— At best, components are "disposed on" or "connecting to" fastener.

# "A sealant region pattern for liquid crystal display / The sealant region of claim 9" ('801 patent: cls. 9, 10)

--

# "An encapsulating structure for a liquid crystal display device / The structure claimed in claim 1" ('914 patent: cl. 1)"

## "A sealant region pattern for liquid crystal display / The sealant region of claim 9" ('801 patent: cls. 9, 10)
## "An encapsulating structure for a liquid crystal display device / The structure claimed in claim 1" ('914 patent: cl. 1)

## '801 Patent – Claims 9, 10; '914 Patent – Claim 1

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| Preambles are limiting. | Plain and ordinary meaning |

### Are the preambles limiting?

## Yes.

# The Claims Indicate the Preamble is Limiting

## '801 Patent – Claim 9

**9**. A sealant region pattern for a liquid crystal display, comprising:

a first substrate and a second substrate opposite thereto;

a predetermined material layer formed on the first substrate; and

an organic material pattern layer having a saw tooth opening formed on the predetermined material layer to expose the surface of the predetermined material layer underneath, wherein the surface of the predetermined material layer and the sidewall of the organic material pattern layer form a predetermined angle.

Ex. 2 (96-3) at 7, '801 Patent, claim 9

"Sealant region pattern" is necessary for the framework of the claim

- first and second substrate held "opposite" by sealant
- "predetermined material layer" is for better seal
- "saw tooth opening" is for better seal
- "predetermined angle" is for better seal

All claims are directed toward sealant regions

47

# The Specification Indicates the Preamble is Limiting

## '801 Patent – Claim 9

(54)  **SEALANT REGION PATTERN FOR LIQUID CRYSTAL DISPLAY AND METHOD FOR FABRICATING THE SAME**

Ex. 2 (96-3) at 7, '801 Patent, Title

(57)  **ABSTRACT**

A sealant region pattern for a liquid crystal display apparatus and a method for fabricating the same. The method com-

Ex. 2 (96-3) at 7, '801 Patent, Abstract

The present invention relates to a display and, more particularly, to a sealant region pattern and fabrication methods thereof.

Ex. 2 (96-3) at 7, '801 Patent, 1:7-9

The present invention reduces reliability and integrity problems encountered in conventional methods. Peeling of sealant, uneven cell gaps, and formation of voids in sealant regions during assembly are all reduced.

Ex. 2 (96-3) at 7, '801 Patent, 1:47-50

## The Prosecution History (IPR) Indicates the Preamble is Limiting

### '801 Patent – Claim 9

I.     **Introduction**

The '801 Patent provides an "improved method of encapsulating an LCD apparatus." Ex. 1001, 1:26–27.  To do this, it claims a specific "method for forming a sealant region pattern of a liquid crystal display," involving specific substrates and layers, including "an organic material pattern layer having a sawtooth opening" and the use of "a predetermined angle." *Id.* at 3:40–51.  Some of the dependent claims recite specific angle ranges. *Id.* at 4:1–4, 4:28–42.

Ex. R (98-18) at 10, Patent Owner Response in IPR at 1

49

# The Claims Indicate the Preamble is Limiting

## '914 Patent – Claim 1

**1**. An encapsulating structure for a liquid crystal display device, comprising:

a first substrate having a sealant region;

a second substrate;

a first material layer disposed on the first substrate;

a second material layer disposed on the first material layer, wherein the second material layer includes an opening with a continuous saw tooth pattern extending along the sealant region to expose the underlying first material layer; and

a sealant disposed on the second material layer in the sealant region and filled into the opening of the second material layer for attaching the second substrate to the first substrate;

wherein the sealant is adapted to contact the first material layer and the second material layer through the opening, and the sealant has substantially flat contact bottom surfaces with the first and the second material layers via the opening with the continuous saw tooth pattern extending along the sealant region.

"Sealant region pattern" is necessary for the framework of the claim

- first and second substrate held "opposite" by sealant

- claimed "predetermined material layer" is for better seal

- claimed "saw tooth" opening is for better seal

- claimed "predetermined angle" is for better seal

All claims are directed toward sealant regions

Ex. J (98-10) at 30, October 25, 2009 Amendment at 2

50

## The Prosecution History Indicates the Preamble is Limiting

### '914 Patent – Claim 1

**Listing of Claims**

1.  (currently amended): <u>An encapsulating structure for</u> ~~A structure for encapsulating~~ a liquid crystal display device, comprising:

Ex. J (98-10) at 6, Amendment at 3

# "comprising / saw tooth opening [pattern]

'801 Patent – Claim 9

'914 Patent – Claim 1

# "comprising / saw tooth opening [pattern]"

## '801 Patent – Claim 9; '914 Patent – Claim 1

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| Plain and ordinary meaning, i.e., opening [pattern] that looks like the teeth of a saw blade - Comprising does not operate to literally encompass other shapes. | Plain and ordinary meaning |

Is BOE's proposed construction the plain and ordinary meaning?    **Yes.**

Does "comprising" operate to encompass other shapes?    **No.**

53

## The Claim and Specification Support BOE's Proposed Construction

### '801 Patent – Claim 9

"saw tooth opening" =  opening that looks like the teeth of a saw blade

9. A sealant region pattern for a liquid crystal display, comprising:
a first substrate and a second substrate opposite thereto;
a predetermined material layer formed on the first substrate; and
an organic material pattern layer having a saw tooth opening formed on the predetermined material layer to expose the surface of the predetermined material layer underneath, wherein the surface of the predetermined material layer and the sidewall of the organic material pattern layer form a predetermined angle.

Ex. 2 (96-3) at 7, '801 Patent, claim 9



FIG. 1B

Ex. 2 (96-3) at 3, '801 Patent, Fig. 1B

FIG. 1A is a top view of a sealant region for a thin film transistor-liquid crystal display (TFT-LCD) according to a comparative example. As shown in FIG. 1A, the TFT-LCD apparatus comprises a TFT array substrate 132, saw tooth openings 134, a sealant region 136, and a color filter substrate 140. Sealant 146 shown in FIG. 1C is applied in the openings, forming a sealant region 136 for attachment of the TFT array substrate 132 to the color filter substrate 140.

Ex. 2 (96-3) at 6, '801 Patent, 2:9-16

54

## The Claim and Specification Support BOE's Proposed Construction

### '914 Patent – Claim 1

"saw tooth pattern" =  pattern that looks like the teeth of a saw blade

1. An encapsulating structure for a liquid crystal display device, comprising:
   a first substrate having a sealant region;
   a second substrate;
   a first material layer disposed on the first substrate;
   a second material layer disposed on the first material layer, wherein the second material layer includes an opening with a continuous saw tooth pattern extending along the sealant region to expose the underlying first material layer; and

Ex. 4 (96-5) at 12, '914 Patent, claim 1



FIG. 5

Ex. 4 (96-5) at 8, '914 Patent, Fig. 3B

The modified curve saw tooth shape in FIG. 5 avoids sharp angle formed by any two openings. In FIG. 2A, the two openings 26a formed in the corner region also balance distribution of the sealant. As shown, some patterns may be asymmetric in a particular local area such as the saw tooth pattern in FIG. 5, but the sealant is balanced substantially along the central axis of either the horizontal or vertical sealant region. The balanced distribution of the sealant in the sealant region reduces problems caused by uneven cell gap, thereby avoiding around gap mura problem.

Ex. 4 (96-5) at 12, '914 Patent, 4:39-48

# The Prosecution History Supports BOE's Proposed Construction

## '801 Patent – Claim 9; '914 Patent – Claim 1

The examiner's understanding of "saw tooth" pattern confirms the ordinary meaning

6.      Jeong teaches that in an LCD encapsulation sealant structure, the sealant pattern may be a saw tooth pattern extending along the sealant region (*Figs. 8 and 9, shown by the structure of the third seal line 240, with seal fins 240a and 240b*).  This pattern forms a "saw tooth" because it has a zigzag shape where seal goes back and forth, like the teeth of a saw blade (*described in paragraph [0032], also claims 14 and 42*).

Ex. J (98-10) at 34, '914 patent File History, April 20, 2010 Rejection at 3

## The Extrinsic Evidence Supports BOE's Proposed Construction

### '801 Patent – Claim 9; '914 Patent – Claim 1

"saw tooth" =  shaped like the teeth of a saw blade

**sawtooth** /'sɔːtuːθ/ *adj.* **1** (also **sawtoothed** /-tuːθt/) (esp. of a roof, wave, etc.) shaped like the teeth of a saw with one steep and one slanting side. **2** (of a wave-form) showing a slow linear rise and rapid linear fall.

Ex. M (98-13) at 5, Oxford Dictionary at 1289

**saw'-toothed'** *adj.* having notches along the edge like the teeth of a saw: also **saw'tooth'**

Ex. N (98-14) at 4, Webster's Dictionary at 572

flattened serrated jaw. **saw'-tones** *n pl* harsh notes. **saw'tooth** *n* and *adj.* **saw'-toothed** *adj* serrated, like the edge of a sawblade. **saw'-**

Ex. O (98-15) at 4, Chambers Dictionary at 1347

# Comprising v. Saw Tooth

## '801 Patent – Claim 9; '914 Patent – Claim 1

Comprising does not operate to encompass openings of other shapes

**9**. A sealant region pattern for a liquid crystal display, comprising:
a first substrate and a second substrate opposite thereto;
a predetermined material layer formed on the first sub-strate; and
an organic material pattern layer having a saw tooth opening formed on the predetermined material layer to expose the surface of the predetermined material layer underneath, wherein the surface of the predetermined material layer and the sidewall of the organic material pattern layer form a predetermined angle.

Ex. 2 (96-3) at 7, '801 Patent, claim 9

- "Comprising" only permits the inclusion of additional structures

58

# "a predetermined material layer formed on the first substrate"

## '801 Patent – Claim 9

## "a predetermined material layer formed on the first substrate"

### '801 Patent – Claim 9

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| "one or more material layers formed on the first substrate prior to forming the organic layer" | "a predetermined material layer formed on the first substrate": Plain and ordinary meaning (accounting for the construction of "layer" and "formed on") |

**Does a "predetermined" material layer need to be determined before the organic layer is formed?**

**Yes.**

## "a predetermined material layer formed on the first substrate"

### '801 Patent – Claim 9

9. A sealant region pattern for a liquid crystal display, comprising:

a first substrate and a second substrate opposite thereto; a predetermined material layer formed on the first substrate; and

an organic material pattern layer having a saw tooth opening formed on the predetermined material layer to expose the surface of the predetermined material layer underneath, wherein the surface of the predetermined material layer and the sidewall of the organic material pattern layer form a predetermined angle.

*'801 patent, claim 9*

- Organic layer is "formed on" the predetermined material layer.

- If the "predetermined" material layer were to be determined *after* the organic layer were formed, then the organic layer could not be "formed on the predetermined material layer" as claimed

61

# Plaintiff's Arguments Read "Predetermined" Out of the Claim

- The '801 Patent is directed to a sealant region pattern for a liquid crystal display.

- Plaintiff acknowledges "[i]n simplified form, devices are built by growing or depositing a layer of material on top of another." Op. Br. at 11.

- However, Plaintiff contradicts itself, "[t]his is a manufacturing detail that is beyond the scope of the claims. . . . it does not matter if the predetermined layer is formed before, after or at the same time as the organic layer." Op. Br. at 16.



FIG. 2A

- Plaintiff provides no alternative meaning, thereby reading 'predetermined' out of the claim.

62

# Plaintiff's Expert's Testimony is Internally Inconsistent

- Plaintiff's expert refers to the predetermined material layer as both built "at the same time" and as "preexisting"

during manufacturing would not matter. For example, if the "predetermined material layer" was built at the same time as the "organic material pattern layer" during manufacturing, the resulting device would still infringe if the resulting devices had an organic material pattern layer formed on the preexisting material layer. I have not seen any intrinsic evidence that suggests the inventors

*Claim Construction Decl. of Dr. Bretschneider at ¶ 105*

# "formed on" v. "directly formed on" and "formed directly on"

'801 Patent – Claim 9

'121 Patent – Claim 1

'117 Patent – Claim 1

# "Formed on" v. "directly formed on" and "formed directly on"

## '801 Patent – Claim 9; '121 Patent – Claim 1; '117 Patent – Claim 1

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| "formed on" – Plain and ordinary meaning<br>'801 Patent Claim 9 | "formed on" – Plain and ordinary meaning, which means forming in a matter directly touching the below layer or substrate<br>'801 Patent Claim 9 |
| "directly formed on"– Plain and ordinary meaning, i.e., formed on without any intervening material.<br>'121 Patent Claim 1 | "directly formed on"– Plain and ordinary meaning<br>'121 Patent Claim 1 |
| "formed directly on" – Plain and ordinary meaning, i.e., the gate oxide layer in the first area is formed on the substrate without any intervening material.<br>'117 Patent Claim 1 | "formed directly on" – Plain and ordinary meaning<br>'117 Patent Claim 1 |

**Is the ordinary meaning of "formed on" broader than "directly formed on" and "formed directly on."**

## Yes.

# "Formed on" v. "directly formed on" and "formed directly on"

## '801 Patent – Claim 9; '121 Patent – Claim 1; '117 Patent – Claim 1

a predetermined material layer formed on the first sub-
strate; and
an organic material pattern layer having a saw tooth
opening formed on the predetermined material layer to
expose the surface of the predetermined material layer
underneath, wherein the surface of the predetermined
material layer and the sidewall of the organic material
pattern layer form a predetermined angle.

*'801 patent, claim 9*

layer, the gate oxide layer, and the fourth conductive
layer over the second area collectively form a transistor,
and wherein the gate oxide layer in the first area is
formed directly on the substrate; and

*'117 patent, claim 1*

a transistor in the second area, the transistor including a
first semiconductor layer formed on the substrate, the
first gate oxide layer over the first semiconductor layer,
and a fourth conductive layer over the first gate oxide
layer, wherein the fourth conductive layer is formed of
the same conductive film as the first conductive layer,
and wherein both the first conductive layer and the
fourth conductive layer are directly formed on the gate
oxide layer; and

*'121 patent, claim 1*

- '121 Patent claim differentiates 'directly'

- Improper to add directly into '801 Patent claim

- Narrower claims have narrower scope

66

# Key Difference – 801 Patent –Multiple LCD Material Layers

## '801 Patent – Claim 9

a predetermined material layer formed on the first sub-strate; and

*'801 patent, claim 9*



FIG. 2A

Predetermined material layer including silicon oxynitride material layer and Ti material layer

TFT array substrate

- Plaintiff has agreed that "layer" means "one or more material layers"

  Joint Claim Construction Statement, ECF No. 101 at 10.

- Only one of multiple material layers "formed on" may be directly touching material below/above

67

# Plaintiff's "Formed On" Construction Contradicts

| Optronic's Proposed Construction |
|---|
| Plain and ordinary meaning, which means forming in a matter directly touching the below layer or substrate |

- Plaintiff construes "formed on" in a way that contradicts (or at best confuses) its agreed construction of "layer"

- The "predetermined" layer issue is fundamentally different from the "formed on" issue  *OS Reply at 7-8*

- Plaintiff is reading limitations into the claims

    ❌ "Directly," "touching,"  and "below" are not found in the '801 patent.

68

# "directly formed on" and "formed directly on"

## '121 Patent – Claim 1; '117 Patent – Claim 1

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| "directly formed on"– Plain and ordinary meaning, i.e., formed on without any intervening material.<br>'121 Patent Claim 1<br><br>"formed directly on" – Plain and ordinary meaning, i.e., the gate oxide layer in the first area is formed on the substrate without any intervening material.<br>'117 Patent Claim 1 | "directly formed on"– Plain and ordinary meaning<br>'121 Patent Claim 1<br><br>"formed directly on" – Plain and ordinary meaning<br>'117 Patent Claim 1 |

**Can there be intervening layers that separate materials "directly formed on" each other?**

## No.

## "directly formed on" and "formed directly on"

### '121 Patent – Claim 1; '117 Patent – Claim 1

> layer, the gate oxide layer, and the fourth conductive layer over the second area collectively form a transistor, and wherein the gate oxide layer in the first area is formed directly on the substrate; and

*'117 patent, claim 1*

> a transistor in the second area, the transistor including a first semiconductor layer formed on the substrate, the first gate oxide layer over the first semiconductor layer, and a fourth conductive layer over the first gate oxide layer, wherein the fourth conductive layer is formed of the same conductive film as the first conductive layer, and wherein both the first conductive layer and the fourth conductive layer are directly formed on the gate oxide layer; and

*'121 patent, claim 1*

- Shared common specification

- Clear that "formed on" has a different scope from "directly formed on" based on claim differentiation

- Intrinsic evidence (including prosecution history) supports construction of "directly" formed on that disallows intervening material

# '121 Patent Intrinsic Evidence

## '121 Patent – Claim 1

a transistor in the second area, the transistor including a first semiconductor layer formed on the substrate, the first gate oxide layer over the first semiconductor layer, and a fourth conductive layer over the first gate oxide layer, wherein the fourth conductive layer is formed of the same conductive film as the first conductive layer, and wherein both the first conductive layer and the fourth conductive layer are directly formed on the gate oxide layer; and

*'121 patent, claim 1*



*'121 Patent, Fig. 2*

# '121 Patent Intrinsic Evidence - Prosecution History

## '121 Patent – Claim 1; '117 Patent – Claim 1

- Optronics construction: Plain and ordinary meaning

layer." Indeed, as shown in FIG. 7B of *Yamazaki* (reproduced below), the conductive wiring (229) in *Yamazaki* is not directly formed on the gate oxide layer (allegedly the gate insulating film 205 in *Yamazaki*).

*'121 patent, Nov. 17, 2008 Amendment at 9.*



*Yamazaki, Fig. 5D*

# '117 Patent Intrinsic Evidence

## '117 Patent – Claim 1

layer, the gate oxide layer, and the fourth conductive layer over the second area collectively form a transistor, and wherein the gate oxide layer in the first area is formed directly on the substrate; and

*'117 patent, claim 1*



*'117 Patent, Fig. 2*

# Plaintiff's Construction Fails

## Optronic's '121 Patent and '117 Patent Proposed Construction

Plain and ordinary meaning

❌ Plaintiff provides no indication of what it understands 'plain and ordinary meaning' to be.

❌ The SiN and Organic layers in the '121 Patent are *not* claimed as "directly formed on"

*Op. Br. at 10; '121 Patent at 5:43-46*



Fig. 2

74

**"wherein the sealant is adapted to contact the first material layer and the second material layer through the opening and the sealant has substantially flat contact bottom surfaces with the first and second material layers via the opening"**

'914 Patent – Claim 1

**"wherein the sealant is adapted to contact the first material layer and the second material layer through the opening and the sealant has substantially flat contact bottom surfaces with the first and second material layers via the opening"**

## '914 Patent – Claim 1

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| Plain and ordinary meaning where "and" is conjunctive and does not encompass "or" | Plain and ordinary meaning |

**Does "and" require the claimed contacts for both layers?**

## Yes.

## *O2 Mico* Dispute 1: Does "and" require the sealant contact the second material layer through the opening?

**1**. An encapsulating structure for a liquid crystal display device, comprising:

a first substrate having a sealant region;

a second substrate;

a first material layer disposed on the first substrate;

a second material layer disposed on the first material layer, wherein the second material layer includes an opening with a continuous saw tooth pattern extending along the sealant region to expose the underlying first material layer; and

a sealant disposed on the second material layer in the sealant region and filled into the opening of the second material layer for attaching the second substrate to the first substrate;

wherein the sealant is adapted to contact the first material layer and the second material layer through the opening, and the sealant has substantially flat contact bottom surfaces with the first and the second material layers via the opening with the continuous saw tooth pattern extending along the sealant region.

The ordinary meaning of "and" requires both claimed contacts

- the sealant is adapted to contact the <u>first</u> material layer through the opening [agreed]

- the sealant is adapted to contact the <u>second</u> material layer through the opening [disputed]

Resolution of this dispute is required under *O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Circ. 2008)

## *O2 Mico* Dispute 2: Does "and" require the sealant have a substantially flat contact bottom surface with the second material layer via the opening?

**1**. An encapsulating structure for a liquid crystal display device, comprising:
  a first substrate having a sealant region;
  a second substrate;
  a first material layer disposed on the first substrate;
  a second material layer disposed on the first material layer, wherein the second material layer includes an opening with a continuous saw tooth pattern extending along the sealant region to expose the underlying first material layer; and
  a sealant disposed on the second material layer in the sealant region and filled into the opening of the second material layer for attaching the second substrate to the first substrate;
  wherein the sealant is adapted to contact the first material layer and the second material layer through the opening, and the sealant has substantially flat contact bottom surfaces with the first and the second material layers via the opening with the continuous saw tooth pattern extending along the sealant region.

The ordinary meaning of "and" requires both claimed contacts

- the sealant has substantially flat contact bottom surface with the <u>first</u> material layer via the opening [agreed?]

- the sealant has substantially flat contact bottom surface with the <u>second</u> material layer via the opening [disputed]

Resolution of this dispute is required under *O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Circ. 2008)

## Plaintiff's Implicit Rewriting of the Claim is Improper

### Plaintiff's "plain and ordinary meaning"

limitations, both of which should be rejected. First, BOE proposes to import the limitation that the sealant contact the second material layer "through the opening," but BOE's proposed limitation is contrary to claim 1(d) where the sealant is disposed on the second material layer. Because it conflicts with another claim limitation, BOE's proposed limitation is not accurate. Second, BOE

Opening Br. at 17.

remarks section of the amendment in its Response exhibits). The file history does not limit this term beyond its plain and ordinary meaning, which does not include BOE's proposed limitations about "both" layers having multiple features.

Reply Br. at 8.

Plaintiff incorrectly argues the claimed contact with the second material layer should be ignored

wherein the sealant is adapted to contact the first material layer ~~and the second material layer~~ through the opening and the sealant has substantially flat contact bottom surface~~s~~ with the first ~~and second~~ material layer~~s~~ via the opening

# "Bottom" and "via the opening" were added by amendment

**Plaintiff's complaint about the intrinsic record is without merit because it is new matter**



Ex. J (98-10) at 21, August 6, 2009 Rejection at 4

- Plaintiff complained that BOE's interpretation is "not supported by the intrinsic evidence." (Op. Br. at 17-18)

- BOE explained the limitation was new matter. (Resp. Br. at 21)

- Plaintiff failed to find support. (Reply Br. at 8)

1. (currently amended): An encapsulating structure for a liquid crystal display device, comprising:

a first substrate having a sealant region;

a second substrate;

a first material layer disposed on the first substrate;

a second material layer disposed on the first material layer, wherein the second material layer includes an opening ~~extending horizontally along the sealant region~~ with a saw tooth pattern <u>extending along the sealant region</u> to expose the underlying first material layer; and

a sealant disposed on the second material layer in the sealant region and filled into the opening of the second material layer for attaching the second substrate to the first substrate;

wherein the sealant is adapted to contact the first material layer and the second material layer through the opening, and the sealant has substantially flat contact <u>bottom</u> surfaces with the first and the second material layers <u>via the opening with the saw tooth pattern extending along the sealant region</u>.

Ex. J (98-10) at 30, October 25, 2009 Amendment at 2

80

# The claim should not be rewritten to save it from invalidity

## Figure 1C Related Art (AAPA) and Accompanying Text Do Not Support this Limitation

- Sealant 14 does <u>not</u> have substantially flat contact bottom surface with second material layer (16) via the opening (4)

- "the organic polymer layer 16 is selectively removed to form the openings 4" '914 patent, 1:49-51



Ex. 4 (96-5) at 5, '914 Patent, Figure 1C

# The claim should not be rewritten to save it from invalidity

## Figure 2 and Accompanying Text Do Not Support this Limitation

- Sealant 224 does <u>not</u> have substantially flat contact bottom surface with second material layer (214) via the opening (26)

- "the organic polymer layer 214 is selectively removed to form the openings 26" '914 patent, 3:49-50



Ex. 4 (96-5) at 6, '914 Patent, Figure 2B



Ex. 4 (96-5) at 7, '914 Patent, Figure 2C

82

# "each pixel / each pixel area"

## '121 Patent – Claims 1, 2

# "each pixel / each pixel area"

## '121 Patent – Claim 1, 2

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| each and every pixel / each and every pixel area | Plain and ordinary meaning |

Should every pixel (or pixel area) of the "plurality of pixels formed on the substrate" meet limitations recited for "each pixel" (and "each pixel area")?

## Yes.

84

# "each pixel / each pixel area"

## '121 Patent – Claim 1, 2

- Claim 1 recites:

  - a substrate and a plurality of pixels formed on the substrate

  - each pixel being in a respective pixel area

  - each pixel area including [limitations]

  - each pixel includes [limitations]

**1**. An electroluminescence (EL) device, comprising:
a substrate; and
a plurality of pixels formed on the substrate, each pixel being in a respective pixel area, each pixel area including at least a first area, a second area, and a third area, wherein each pixel includes:
at least a first capacitor and a second capacitor in the first area, the first capacitor including a first conductive layer

**2**. The device of claim **1**, each pixel further comprising a seventh conductive layer in the second area for providing contact to the first semiconductor layer.

# "each" should be construed to require "every"

## '121 Patent – Claim 1, 2

- Dispute

    – Must <u>every</u> pixel of the "plurality of pixels formed on the substrate" meet limitations recited for "each pixel"?

    – Must <u>every</u> pixel area meet limitations recited for "each pixel area"?

- Answer:  Yes

 Ruling:  The Board erred in holding that some wire legs of the Skvorecz device, as claimed, need not have an offset, ***when the claims state that <u>each</u> wire leg has an offset***.

In re Skvorecz, 580 F.3d, 1262, 1267 (Fed. Cir., 2009)(emphasis added)

- Construing "each" as "each and every" prevents the error made by the Board in *In re Skvorecz*.

86

# Plaintiff's Arguments Fail

- Plaintiff: "every" should be rejected. *Op. Br. at 18*

  – Plaintiff admits "each" is "an antecedent reference to **each** pixel that comprises the claimed plurality"

    • That includes **every** pixel of the claimed plurality

- Plaintiff: "Each and every" imports limitation that every pixel in the accused display conform to the claim limitations. *Op. Br. at 18*

  – Claims are directed to a plurality of pixels formed on a substrate, not to a display

- Plaintiff: Federal Circuit in Skvorecz did not construe "each" as "each and every" *Reply Br. at 9*

  – Ruling: Board errored by holding some wire legs need not have the "each" limitation

    • Ruling required <u>every</u> wire leg to have the "each" limitation.

**"defining at least a first area for capacitors and a second area for a transistor on the substrate" ('117 patent: cl. 1)**

**"defining at least a first area for capacitors, a second area for a transistor on the substrate and a third area for an organic light-emitting diode (OLED) on the substrate" ('222 patent: cl. 1)"**

'117 Patent – Claim 1; '222 Patent – Claim 1

88

**"defining at least a first area for capacitors and a second area for a transistor on the substrate" ('117 patent: cl. 1)**
**"defining at least a first area for capacitors, a second area for a transistor on the substrate and a third area for an organic light-emitting diode (OLED) on the substrate" ('222 patent: cl. 1)"**

## '117 Patent – Claim 1; '222 Patent – Claim 1

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| defining at least a first area for capacitors and a second nonoverlapping area for a transistor on the substrate '117 patent: cl. 1 | Plain and ordinary meaning |
| defining at least a first area for capacitors, a nonoverlapping second area for a transistor on the substrate, and a nonoverlapping third area for an organic light-emitting diode (OLED) on the substrate '222 patent: cl. 1 | |

Are the claimed areas distinct (i.e., nonoverlapping)?

## Yes.

**"defining at least a first area for capacitors and a second area for a transistor on the substrate" ('117 patent: cl. 1)**
**"defining at least a first area for capacitors, a second area for a transistor on the substrate and a third area for an organic light-emitting diode (OLED) on the substrate" ('222 patent: cl. 1)"**

## '117 Patent – Claim 1; '222 Patent – Claim 1

- Method of forming pixels includes "defining" first, second [and third] areas

1. A method for forming a pixel of an electroluminescence device, comprising:
    providing a substrate;
    defining at least a first area for capacitors and a second area for a transistor on the substrate;
    forming a gate oxide layer over the first area;
    forming a first conductive layer over the gate oxide layer over the first area;

*'117 patent, claim 1*

1. A method for forming a pixel of an electroluminescence device, comprising:
    providing a substrate;
    defining at least a first area for capacitors, a second area for a transistor on the substrate and a third area for an organic light-emitting diode (OLED) on the substrate;
    forming a first conductive layer over the first area;
    forming a first dielectric layer over the first conductive layer over the first area;

*'222 patent, claim 1*

- Claims further recite forming different layers and components in those respective areas

  – If claimed areas can overlap or be co-extensive, then the claimed areas are superfluous and meaningless

# The Intrinsic Evidence Supports BOE's Construction

**BOE's Proposed Construction**

[areas are nonoverlapping]

- Specification describes <span style="color:green">area A</span> for capacitors, <span style="color:orange">area B</span> for transistors, and <span style="color:#29abe2">area C</span> for OLED



> Referring to FIG. **2**, pixel **100** is formed on a glass substrate **200**. Capacitors **108** and **112** are shown to be formed over an area A of substrate **200**, transistor **102** is shown to be formed over an area B of substrate **200**, and part of OLED **110** is shown to be formed in an area C of substrate **200**.

'222 patent, 5:43-47

- Areas are shown and described as distinct (i.e., nonoverlapping)

**Fig. 2**

'222 patent, Fig. 2

91

# The Intrinsic Evidence Supports BOE's Construction

## BOE's Proposed Construction

[areas are nonoverlapping]

- Specification describes design tradeoffs that determines "aperture ratio"

  – The capacitor and transistor are light blocking elements, so they are formed in areas distinct from the area with the OLED

  – The larger the capacitor (i.e., the larger area A is), the lower the aperture ratio, which can be further reduced by transistors (i.e., in area B) and various lines *'222 patent, 1:44-51*

    - Lower aperture ratio means less effective area for emitting light by OLED

# The Intrinsic Evidence Supports BOE's Construction

## BOE's Proposed Construction

[areas are nonoverlapping]

- Specification describes the solution as increasing capacitance without increasing area A so the aperture ratio [relative to area C] is not decreased

> formed. Additionally, since all of capacitors **108**, **112**, **114**, and **116** are formed over area A of substrate **200**, the area of the storage capacitor of pixel **100** is not increased and, therefore, an aperture ratio is not decreased, while the storage capacitance is significantly increased.

*'222 patent, 8:38-42*

- Both the problem and solution are described with respect to areas A, B and C which are distinct from each other

  – The problem/solution are nonsensical if the areas can overlap or be co-extensive

93

# The Intrinsic Evidence Supports BOE's Construction

| BOE's Proposed Construction |
|---|
| [areas are nonoverlapping] |

- Claim 1 of the '117 patent confirms the areas must be distinct

  > forming a semiconductor layer over the second area **with-out over the first area;**
  >
  > *'117 patent, claim 1*

  – The negative limitation "without over the first area" is nonsensical if the first and second areas could overlap or be co-extensive

  – Intent is clear: first and second areas are distinct

- Claim 1 of the '221 patent requires the gate oxide be over the first conductive layer in the first area but not the second area

  > forming a gate oxide layer over the second area **and over the first conductive layer over the first area,** wherein
  >
  > *'222 patent, claim 1*

  – Claim 1 clearly written with the intent that the first and second areas are distinct

# Plaintiff's Arguments Fail

- Plaintiff:  BOE is importing limitations *Op. Br. at 18-19*

  - Overlapping or co-extensive areas are not disclosed or enabled

    - Patentee could have disclosed and claimed the invention using just components and not distinct areas, but chose not to

- Plaintiff:  In a Ven diagram, overlapping areas are circles defined by certain characteristics *Reply Br. at 9*

  - This analogy fails because Ven diagrams can include concentric circles with complete overlap

  - If areas A, B, C can be co-extensive as Plaintiff argues, then there really is only one area.

# "is electrically connected to"

## '222 Patent – Claim 1

96

# "is electrically connected to"

## '222 Patent – Claim 1

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| is connected such that electric conduction current can flow to | Plain and ordinary meaning |
| Or, alternatively, | |
| does not encompass connection solely by capacitive coupling | If the Court limits, then: "not encompass solely capacitively coupling" (Reply Br. at 10) |

**Key Dispute: Is "electrically connected to" broad enough to encompass <u>capacitive</u> coupling?**

## No.

# "is electrically connected to"

## '222 Patent – Claim 1

**_Thorner v. Sony Computer Entertainment America, LLC_, 669 F.3d 1362 (2012)**



"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art ==when read in the context of the specification and prosecution history==."

98

# "is electrically connected to"

## '222 Patent – Claim 1

1. A method for forming a pixel of an electroluminescence device, comprising:
   providing a substrate;
   defining at least a first area for capacitors, a second area for a transistor on the substrate and a third area for an organic light-emitting diode (OLED) on the substrate;
   forming a first conductive layer over the first area;
   forming a first dielectric layer over the first conductive layer over the first area;



FIG. 2

Context of claims and specification:

- Individual conductive v. insulating layers

- Components of a pixel

- Components of capacitors

- Components of transistors

- Components of LEDs

99

# "Capacitive Coupling" In Pixel Circuits

as shown in FIG. **3**, which shows a circuit diagram of pixel **100** and a cross-sectional view of capacitors **108** and **112** consistent with the second embodiment of the present invention. Thus, capacitor **112** comprises second metal pattern **210**A, passivation silicon nitride **212**, and third metal **220**, while capacitor **108** comprises first metal pattern **206**A, ILD **208**, and second metal pattern **210**A. Also, first metal pattern

'222 Patent at 6:52-58



FIG. 3

'222 Patent at Fig. 3

- Two metals (210A and 220) separated by an insulator (212) collectively form a "capacitor" 112

- Capacitor 112 is one circuit element within a pixel circuit

**Can two electrically insulated metals be "electrically connected to" each other?**

100

# Intrinsic Evidence: "Electrically Connected" Excludes Capacitive Coupling

**Patentee introduced claim term "electrically connected to" in an amendment**

<u>Listing of Claims</u>

1. (Currently Amended) A method for forming a pixel of an electroluminescence device, comprising:

...

wherein the first conductive layer over the first area is <u>directly connected</u> ~~connectable~~ to a power supply voltage, <u>wherein the second conductive layer is</u> <u>electrically connected to</u> the fourth conductive layer, and wherein the first conductive layer, the first dielectric layer, and the second conductive layer over the first area collectively form a first one of the capacitors over the first area, the second conductive

...

Ex. V (Dec. 27, 2011 Amendment) at 2

101

# Intrinsic Evidence: "Electrically Connected" Excludes Capacitive Coupling

**Patentee used the term "electrically connected to" while characterizing prior art (Koo)**

power supply voltage 147. Further, *Koo's* second electrode 143 is not electrically connected to the gate electrode 131.

Ex. V (Dec. 27, 2011 Amendment) at 13 (emphases added)



Ex. W (Koo) at Fig. 2A (annotations added)

- Gate electrode 131 is the same piece of metal as electrode 132. Ex. 10 (Neikirk) at ¶ 65.

- These two electrodes are separated by insulating film 135. Ex. W (Koo) at ¶ 38.

- Electrodes 132 and 143 form a capacitor. *Id.* at ¶ 39.

**Optronic's overly broad "plain meaning" is irreconcilable with the intrinsic record.**

# Uncontested Expert Testimony

- Explanation of the intrinsic record and *Koo* by BOE's expert, Dr. Neikirk, is <u>unrebutted</u> and confirms BOE's construction is correct. (Ex. 10 at ¶¶ 60-74)

- Optronic's expert, Dr. Bretschneider, submitted a claim construction declaration, and reserved his right to offer testimony "if asked." (Ex. 8 at ¶ 114)

# Optronic's Expert Was Silenced

- When asked about this term at Dr. Bretschneider's deposition, counsel for Optronic instructed him not to answer

Q Are the two electrodes that form the capacitor electrically connected to each other?

ATTORNEY WEISS:  Counsel, what relevance does this have to Mr. Bretschneider's declaration, the claim construction here?

ATTORNEY ERICKSON:  Please don't have any speaking objections.

ATTORNEY WEISS:  Okay.  I'm going to instruct you not to answer as outside the scope.

Q Are you going to follow that instruction, Dr. Bretschneider?

**A Yes.**

(Ex. DD at 16:22-17:8)

# "auxiliary electrode"

## '509 Patent – Claims 1, 5, 10

# "auxiliary electrode"

## '509 Patent – Claims 1, 5, 10

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| supplemental electrode | Plain and ordinary meaning, meaning an electrode which does not perform a primary and essential functionality |

Should the negative limitation "which does not perform a primary and essential functionality" be read into this claim term?

## No.

# "auxiliary electrode"

- "Auxiliary electrode" is recited without any functions

**1**. A pixel structure, comprising:
a data line and a scan line;
at least one active device electrically connected with the
   data line and the scan line, and each active device com-
   prising a gate, a channel layer, a source, and a drain;
a first auxiliary electrode electrically insulated from the
   active device; and
a light emitting device disposed above the first auxiliary
   electrode, wherein the light emitting device comprises:
   a first electrode layer electrically connected with the first
      auxiliary electrode;
   a light emitting layer disposed on the first electrode
      layer; and
   a second electrode layer disposed on the light emitting
      layer, wherein the second electrode layer is electri-
      cally connected with the active device.

*'509 patent, claim 1*

**5**. The pixel structure according to claim **1**, wherein the first
auxiliary electrode is a single electrode layer.

*'509 patent, claim 5*

**10**. The pixel structure according to claim **1**, further com-
prising a second auxiliary electrode electrically insulated
from the active device and disposed at a side of the light
emitting device, wherein the second auxiliary electrode is
electrically connected with the first electrode layer of the light
emitting device.

*'509 patent, claim 10*

107

# "auxiliary electrode" means "supplemental electrode"

## '509 Patent – Claims 1, 5, 10

| BOE's Proposed Construction | Optronic's Proposed Construction |
|---|---|
| supplemental electrode | Plain and ordinary meaning, meaning an electrode which does not perform a primary and essential functionality |

- Plaintiff concedes BOE's construction is correct:

> There is no dispute that the plain meaning of "auxiliary" is "supplemental."

*Op. Br. at 22*

- **BOE's construction should be adopted**

# "auxiliary electrode" means "supplemental electrode"

## '509 Patent – Claims 1, 5, 10

- BOE's construction is consistent with '509 patent

  – "Auxiliary electrode" term is only used for an electrode in addition (supplemental) to
    other electrodes or electrode layers  *'509 patent at 3:43-47; 4:47-56; 7:1-15; Figs. 2-6*

  – Claims recite electrical connections, configuration and position; **not function**

  > a first auxiliary electrode electrically insulated from the
  > active device; and
  > a light emitting device disposed above the first auxiliary
  > electrode, wherein the light emitting device comprises:
  >   a first electrode layer electrically connected with the first
  >   auxiliary electrode;

  *'509 patent, claim 1*

  > **10**. The pixel structure according to claim **1**, further com-
  > prising a second auxiliary electrode electrically insulated
  > from the active device and disposed at a side of the light
  > emitting device, wherein the second auxiliary electrode is
  > electrically connected with the first electrode layer of the light
  > emitting device.

  *'509 patent, claim 10*

  > **5**. The pixel structure according to claim **1**, wherein the first
  > auxiliary electrode is a single electrode layer.

  *'509 patent, claim 5*

## "auxiliary electrode" means "supplemental electrode"

### '509 Patent – Claims 1, 5, 10

- BOE's construction is consistent with extrinsic evidence

  - *Wiley Electrical and Electronics Engineering Dictionary, IEEE Press, 2004* uses "**supplementary**" or "**supplemental**" in each of the definitions for:
    - "auxiliary anode," "auxiliary channel," "auxiliary circuit," "auxiliary contacts," "auxiliary device," "auxiliary equipment," "auxiliary function," "auxiliary power," and "auxiliary relay" *Ex. 21 at 51*

  - *Webster's New World Dictionary* (quoted by Plaintiff's expert):
    - "Auxiliary" defined as "**additional**; **supplementary**; reserve"
      *Ex. 8 at ¶57*

- **"Auxiliary electrode" is electrode in addition (supplemental) to other electrodes or electrode layers**

110

# Plaintiff's Construction Lacks Any Intrinsic Support

| Optronic's Proposed Construction |
|---|
| Plain and ordinary meaning, meaning an electrode which does not perform a primary and essential functionality |

- Plaintiff construes "auxiliary" with a negative limitation that is not its plain and ordinary meaning

  - ❌ Contrary to Plaintiff's own dictionary definition

    - "**additional**; **supplementary**; reserve" *Ex. 8 at ¶57*

    - "additional" ≠ "does not perform a primary and essential functionality"

- Plaintiff is reading limitations into the claims through claim construction

  - ❌ "Primary," "essential" and any form of "function" are not found in the '509 patent.

111

# Plaintiff's Construction Fails

| Optronic's Proposed Construction |
|---|
| Plain and ordinary meaning, meaning an electrode which does not perform a primary and essential functionality |

- Plaintiff cites to the function of reducing total resistance to enhance primary and essential functionality of the first electrode layer

  - ❌ Plaintiff's construction does not tie the "functionality" to first electrode layer nor its functions

  - ❌ Specification twice disclaims that the invention is limited to resistance reduction *'509 patent, 6:4-10; 7:52-57*

  - ❌ Plaintiff's expert admitted nothing in claim 1 requires resistance reduction or parallel connection. *Ex. DD at 45:15-18; 53:19-21*

  - ❌ Patent is silent on what makes physical contact to the power line

    - Pure speculation that auxiliary electrode could be removed leaving an operable pixel

# Plaintiff's Construction Is Indefinite

| Optronic's Proposed Construction |
|---|
| Plain and ordinary meaning, meaning an electrode which does not perform a primary and essential functionality |

- Plaintiff's construction is indefinite

  ❌ The functionality is unspecified and ambiguous

  - Functionality could be anything

  ❌ "Primary and essential" is subjective and ambiguous

  - There is no reasonable certainty what functionalities rise to the level of being "primary and essential"

  - Neither Plaintiff's construction nor '509 patent provides any guidance

  - An auxiliary electrode can enhance functionality, and be primary and essential, depending on what one considers to be "primary and essential."